

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| NSCO LLC<br>3100 W. Cary Street<br>Richmond, Virginia 23221, | § § § § | |
| Plaintiff, | § § | Civil Action No. 3:15cv700 |
| v. | § § | JURY DEMAND |
| Need LLC, | § § | |
| Defendant. | § § § | |

## COMPLAINT

Plaintiff, NSCO LLC ("Plaintiff"), brings this action against Defendant Need LLC ("NL" or "Defendant"). Need alleges, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters as follows:

### NATURE OF THE ACTION

1.     This is an action for trademark infringement under 15 U.S.C. § 1114(1), trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a), trademark infringement under Va. Code Ann. § 59.1, *et. seq.*, common law trademark infringement and unfair competition, and violation of the Anti-Cybersquatting Consumer Protection Act under 15 U.S.C. § 1125(d).

2.     For over fifteen years, Plaintiff has been a necessary resource for the style-conscious, due to its promotion and sale of trend-leading clothing and accessories via a retail store as well as an e-commerce website. Plaintiff's affiliate Need Supply, LLC ("NS") operates Plaintiff's retail store, and Plaintiff operates the "Need Supply" website (NS and Plaintiff together, known as "Need") under Plaintiff's federally registered trademark NEED SUPPLY

CO. and its common law trademark NEED (collectively "the Mark"). Need has become well-known through extensive advertising to consumers and designers, commercial success, and unsolicited media coverage, among other reasons. Need brings this lawsuit to protect Need's rights in the face of NL's unauthorized use of the trademark "Need" to promote NL's website, as well as clothing and accessories. If not enjoined from using "Need," NL's website, clothing, and accessories are likely to cause further consumer confusion with the Mark. NL's attempt to benefit from Need's commercial success poses imminent and irreparable harm to both Need and the public if not enjoined.

## THE PARTIES

3.     Plaintiff is a limited liability company organized in Virginia with its principal place of business in Richmond, Virginia. Plaintiff's affiliate, NS, operates a retail clothing store in Richmond, Virginia, which store was opened in 1999. Since 2008, Plaintiff has operated a website, in addition to its brick-and-mortar store, from which it promotes and sells clothing and accessories for women and men.

4.     Upon information and belief, NL is a Texas limited liability company with a principal place of business at 2547 Farrington Street, Dallas, Texas 75207. NL does business in this Judicial District, including through the provision of an interactive e-commerce website engaged in the transaction of business in Virginia. Service may be effected upon Defendant through service of its President and CEO Matt Alexander, located at 2547 Farrington Street, Dallas, Texas 75207, or through Defendant's registered agent.

## JURISDICTION AND VENUE

5.     The United States District Court for the Eastern District of Virginia has jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1331, 1331(a) in that this

matter is a civil action arising under the Constitution, laws, or treaties of the United States,

namely, under the trademark laws of the United States, 15 U.S.C. § 1051, *et. seq*. This action

involves federal trademark rights and federal Lanham Act violations. This Court has

supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b)(3) and (c)(3).

## FACTS COMMON TO ALL CLAIMS

### *Need's Trademark*

7. Need is a leader in the marketing, promotion, and sale of well-designed and well-
constructed clothing and accessories that evoke a clean design sensibility. NS opened its retail
clothing store, "Need Supply Co.," in 1999 in Richmond, Virginia to promote its products to a
discerning consumer base.

8. In 2008, to capitalize on the growing capabilities of the Internet in the fashion
industry and to project its brand to an expanding audience, Plaintiff launched an e-commerce
website at www.needsupply.com to sell clothing and accessories ("the Website"), still focusing
on unique and well-made items for fashionable and sophisticated consumers.

9. Since the launch of the Website, shopping for clothing—high fashion clothing and
accessories in particular—has matured and evolved with the prevalence and accessibility of the
Internet. While such shopping previously required a trip to a brick and mortar store, or perhaps
consultation with a print catalog, shopping for high-end clothing and accessories can now be
undertaken online. With the rise of sophisticated online consumers, there has also been a
simultaneous proliferation of "curated" fashion websites. At these websites, celebrities,
designers, and other "tastemakers" choose particular products for promotion and sale to the
public.

3

10.     The Website, in addition to selling clothing and accessories, also curates specific items, in order to highlight particular designers, emphasize certain trends, or communicate Need's interest in a particular product, experience, or area of the world.

11.     The Website has emerged not just as a "fashion website" marketing and selling stylish clothing and accessories, but the Website has become a refuge for those seeking relief from department stores and "fast fashion" outlets.  The Website offers information on design, aesthetics, and travel, conveyed through rich photography and alluring commentary.   The Mark has now become the "NEED" brand, conveying style, design, and innovation.  As a result, Need and the Mark have garnered substantial unsolicited publicity and are widely-recognized and well-regarded for their success.  Screen shots below taken from November 3, 2015 depict the manner in which products are promoted at the Website and also convey the style sensibility of Need.







Holiday Travel





**The Tokyo Pick**

Japan is home to some of the best dressed people we know. In honor of the opening of our first shop in the capital this week, we asked our stylish Editor-in-chief of Human Being Journal Jason, Kote, to pull together some of his favorite pieces for fall. No particular American spokesman has been a staple of Japanese menswear for decades. The constant, or lasting and enduring of the classic styles has resulted in a category known as the Hard, or Hidden Harajuku. Kota is one of the prime examples of the workwear-labels-in-an-easy style, with well eye for quality construction and a relaxed approach to wear and tear. His style emphasizes the story inherent in the garments.

12.    Plaintiff owns the following federal trademark registrations for the Mark on the United States Patent and Trademark Office ("USPTO") Principal Register:

| Mark | Reg. No./Reg. Date | Goods/Services |
|------|-------------------|----------------|
| NEED SUPPLY CO. | 2,322,498 / February 22, 2000 | IC 35: Retail clothing store services |
| NEED SUPPLY CO. | 4,616,942 / October 7, 2014 | IC 35: Computerized on-line ordering featuring men's and women's clothing, jewelry, and beauty products |

True and accurate copies of the Certificates of Registration are attached as <u>Exhibit 1</u>.

13.    Plaintiff also owns a pending federal trademark application for the trademark NEED (Application No. 86/201,930) that identifies "clothing, namely, men's and women's pants, shorts, shirts, t-shirts, dresses, skirts, sweaters, jackets, coats, and hats." The application

has been successfully examined by the USPTO, has moved through the opposition period without issue, and will soon mature to registration.

14.     Need is not aware of any third-party trademark registrations covering the Mark as used to promote the retail sale of clothing, or the computerized online ordering of clothing and accessories.  Moreover, Defendant's use of the Mark notwithstanding, Need is not aware of any third parties that have promoted the retail or online sales of clothing using the formative "Need."

15.     The federal trademark registrations listed above are *prima facie* evidence of Need's ownership and validity of the Mark.  Registration No. 2,322,498 is valid and incontestable and constitutes conclusive evidence of Need's ownership as well as the validity of the Mark.

### *Need's Advertising and Promotion*

16.     Need relies upon a numerous array of mediums to promote the Mark and its products, including but not limited to, a vast social media presence, in-store events, and a lifestyle journal.  The following examples demonstrate Need's strong online presence and promotional efforts:







You are on Twitter Mobile because you are using an old version of Internet Explorer. Learn more here
Need Supply Co.
Follow
View more photos
Tweets
Need Supply Co.
5 elegant, unobtrusive, effective tips for a better get-it-done routine
Need Supply Co.
On Foot: Monday morning kicks courtesy of
in his Common Projects Achilles Lows

Need Supply Co
Create Page
Supply Co.
Shop Now
Like
Message
Timeline
About
Photos
Shop Now
More
Status
Photo / Video
ABOUT
APPS
Shop Now
Need Supply Co.
The Minimalist's Guide to Productivity: 5 elegant, unobtrusive, effective tips for a better get-it-done routine
Sponsored
NORDSTROM
Free shipping. Free returns.
SHOP NOW
Chat (11)

17.    The Mark has been the subject of numerous, independent and unsolicited

references in U.S. print and electronic media.  In these references, fashion commentators and

journalists connect the Mark with unique, stylish, and sought-after clothing and accessories.

These references include the following representative examples:

> "Mass retail is ubiquitous these days, and while the convenience aspect of it is hard to
> ignore, the Targets and Walmarts crowding the landscape are turning our country in a
> homogenous strip mall (ok, getting off my soapbox now). So, you can imagine how
> excited we were to stumble upon Need Supply Co., an e-tailer that started as a mom-and-
> pop shop in Richmond, Virginia." [*Huffington Post*, February 28, 2012]

> "GQ magazine named Need Supply one of the 25 Best Men's Stores in America in April
> 2012. Lucky magazine this year named it a "Favorite Store" in the country in its 100
> Perfect Outfits special edition.  Need Supply also earned a spot this year on Inc.
> magazine's list of the nation's 5,000 fastest-growing companies. The company was
> ranked No. 723, with a 640 percent increase in revenue from 2009 to 2012." [*Richmond
> Times-Dispatch*, November 18, 2013]

> "Punk might go hand in hand with ripped jeans, combat boots, and rebellion, but get
> ready--because this badass aesthetic is scoring a chic update for fall thanks to Need
> Supply." [*Nylon*, September 17, 2014]

> "If you aren't already shopping at Need Supply Co., you're missing out. This one-stop
> fashion shop has an effortless take on trend-forward styles that are bound to get you
> excited for Spring." [www.popsugar.com, April 9, 2015]

"Need Supply is easily one [the] the best online destinations for savvy menswear shoppers." [*Business Insider*, June 8, 2015]

"Need Supply is the ultimate destination for everything cool and minimalist." [www.toethatline.com, September 2, 2015]

"Need Supply Co. in Carytown started over 20 years ago in Richmond and has since become a popular destination for the slavishly stylish and fashionistas -- as well as a successful online commerce force." [*Style Weekly*, October 8, 2015]

"Founded almost 20 years ago, Need Supply has long been a favorite shopping destination for people looking for hardworking, elegant, but unfussy menswear. Stylish mainstays…all hang alongside each other, making for the ideal menswear mix." [*Details*, October 12, 2015]

18.     Due to the Mark's popularity among consumers, many consumers refer to the

Mark simply as "Need." The following includes representative samples of consumers referring

to the Mark in this manner:

I'm a CA shopper and bought something on NEED that I was hoping would get to me before some holiday travel…Always been impressed with their commitment to good clothes and design and now am a fan of their customer service (especially in shopping crazy times like this!) I'll be back. [*Yelp!*, December 2, 2014]

But thanks to the reach of the internet, the rapid rise in online shopping, and a team of forward-thinking, graphically-inclined buyers and builders, Need has gone from small-town shop to a major online retail destination. Thanks internet! [*Racked*, May 1, 2014]

19.     Need has invested substantial time, effort, and resources in developing and

maintaining the Mark and building the "Need" brand, and Need has used the Mark consistently

in marketing and promoting its products and services since at least 1999. As a result, the Mark

possesses enormous value to Need.

### *Defendant's Wrongful Acts*

20.     In June of 2013, Need learned of Defendant's advertising and promotion of a

website entitled "Need," wherein defendant advertises, promotes, and sells clothing and fashion

items. Many of the items offered by the Defendant's infringing website are not only similar to

Need's products, at various times, Defendant has promoted and sold the exact same brands Need offers on its website.   These brands include:

- LIFETIME COLLECTIVE
- NUDIE JEANS CO.
- GENERAL ASSEMBLY
- WOOLRICH
- KSUBI
- BRAUN
- BELLROY
- GENERAL KNOT & CO.
- MONOCLE
- FJALLRAVEN
- NATIVE YOUTH
- ZANEROBE
- PUBLIC-SUPPLY
- BRIDGE AND BURN
- NATIVESHOES
- ALTERNATIVE APPAREL
- JUNIPER RIDGE
- STUTTERHEIM
- FILSON
- KINFOLK
- REDWING

- ORIGINAL PENGUIN

- HAPPY SOCKS

- MAN OF THE WORLD

- FIELD NOTES

- SLVDR

- IZOLA

- BAXTER OF CALIFORNIA

- DANIEL WELLINGTON

- FAIRIBAULT WOOLEN MILLS

- WILL LEATHER GOODS

- CEREAL

- GATHER

21.    Need's consumers have been confused as to the origin of Defendant's products, presuming that Defendant's products originated with Need.

22.    Defendant began marketing itself as "Need Lifestyle," but is now promoting itself simply as "Need" (together, "the Infringing Mark") to operate and promote its website located at www.neededition.com ("the Website").

23.    The Infringing Mark shares the dominant and distinctive element with the Mark, and Defendant promotes identical products as Need, namely clothing and accessories, and shares the same channels of trade—website promotion—as Need has depicted below:

13



**WHAT IS NEED?**

*Need is a refined retailer and lifestyle publication for the modern gentleman.*

Each month, Need curates, sources, and sells a limited selection of exclusive products — including clothing, literature, furniture, artwork, coffee, and so forth — for the discerning gentleman. And, more frequently, Need creates one-off Essentials collections for a gentleman's everyday life.

Collections are coupled with independent journalism, award-winning editorial photography, illustrations, and film.

Rather than selling overwhelming quantities of items, Need works exclusively with the world's top designers and brands — both independent and otherwise — to curate and sell the finest products befitting the season, location, and age of our members.

In other words, Need is a sophisticated solution for men to live a little more interestingly throughout the year.



24.     In July 2013, Need issued a cease and desist letter to Defendant, addressed to Mr. Matt Alexander, demanding that Defendant cease using the Infringing Mark, due to a likelihood of consumer confusion.  The letter was issued on July 16, 2013 and sought a response by July 30, 2015 ("the Letter").

25.     On November 25, 2013, due to the lack of response by Defendant, Need re-issued the Letter to Mr. Alexander.

26.     Despite Need's demand, Defendant has failed and refused to cease its infringing use of the Mark.

27.     Defendant's continued unauthorized use of the Mark, despite Defendant's knowledge of Need's ownership of the Mark, as well as the seniority and superiority of the Mark, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of the Mark and to cause confusion, deception, and mistake in the minds of the public to great and irreparable injury of Need. Accordingly, Need brings this action to rectify the harm Defendants have already caused and to prevent their causing further harm.

## COUNT I

## INFRINGEMENT OF A REGISTERED TRADEMARK

28.     Need realleges and incorporates herein each and every allegation set forth in the foregoing paragraphs as fully set forth herein.

29.     Without authorization from Plaintiff, Defendant is using in interstate commerce an infringing imitation of Plaintiff's trademark in connection with the operation of a website and the sale of clothing and accessories.

30.     Defendant's conduct is likely to have caused and will continue to cause confusion and mistake among consumers and others as to the source, origin, or sponsorship of Defendant's services.

31.     Defendant's conduct is a willful and intentional violation of Plaintiff's senior trademark rights.

32.     Defendant's conduct constitutes trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. §1114.

## COUNT II

## FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN

33.     Need realleges and incorporates herein each and every allegation set forth in the foregoing paragraphs as fully set forth herein.

34.     Because of Defendant's efforts to associate its infringing website with the goodwill and reputation of Plaintiff's "NEED" name and brand, consumers are falsely led to believe that Defendant's website is associated with, endorsed or is sponsored, or otherwise approved by, Plaintiff, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Defendant has acted intentionally to create at least initial interest, if not actual confusion, between itself and Need.

35.     The foregoing acts and conduct by Defendant constitute false designation of origin in connection with services distributed and sold in interstate commerce, in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

<div align="center">

**COUNT III**

**COMMON LAW TRADEMARK INFRINGEMENT**

</div>

36.     Need realleges and incorporates herein each and every allegation set forth in the foregoing paragraphs as fully set forth herein.

37.     By reason of Plaintiff's continuous and longstanding use of the Mark, as well as the inherent distinctiveness of the Mark, consumers associate and recognize the Mark as representing a single source or sponsor of services, and therefore Plaintiff's trademark is protectable at common law.

38.     Plaintiff owns and enjoys common law trademark rights in the "NEED" trademark, and these rights are superior to any rights that Defendant may claim in and to the Mark with respect to Defendant's services. Plaintiff's trademark is inherently distinctive and has acquired secondary meaning with the trade and consuming public, such that Plaintiff's trademark is associated with Plaintiff.

39.     Defendant's use of the Mark in connection with the advertising, marketing, and promotion of the Website is likely to cause confusion as to the source of Defendant's services, in that consumers will be likely to associate or have associated such services as originating with Plaintiff, all to the detriment of Plaintiff.

40.     By reason of Defendant's actions alleged herein, Plaintiff has suffered, and will continue to suffer, irreparable injury to its rights, and has suffered, and will continue to suffer, substantial loss of goodwill and loss in the value of Plaintiff's trademarks, unless and until Defendant is enjoined from continuing its wrongful acts.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

41.     Need realleges and incorporates herein each and every allegation set forth in the foregoing paragraphs as fully set forth herein.

42.     Need's Mark is distinctive of Plaintiff's products and services, and the public has come to recognize the Mark as identifying Plaintiff as the source of trend-leading, well-made clothing and accessories.

43.     In view of the association by the public of the Mark with Plaintiff and its products and services, Defendant's use of "NEED" in connection with the Website to sell clothing and accessories is bound to cause confusion, mistake, and deception amongst the relevant public as to whether Defendant's services emanate from, or are licensed or approved by, Plaintiff.

44.     Defendant's conduct complained of herein constitutes common law unfair competition. Said conduct has damaged and will continue to irreparably damage Plaintiff's valuable goodwill unless enjoined by this court.

## COUNT V

## VIOLATION OF VA. CODE ANN. § 59.1-92.12

45.     Need realleges and incorporates herein each and every allegation set forth in the foregoing paragraphs as fully set forth herein.

46.     Without authorization from Plaintiff, Defendant is using an infringing imitation of Plaintiff's federally registered trademarks in connection with the operation of a website and the sale of clothing and accessories within the Commonwealth of Virginia.

47.     Defendant's use of the Mark is likely to cause consumer confusion and mistake as to the source and origin of Defendant's website.

48.     Plaintiff has been and is being damaged by said acts of Defendant.

## COUNT VI

## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

49.     Need realleges and incorporates herein each and every allegation set forth in the foregoing paragraphs as fully set forth herein.

50.     The domain name www.needdedition.com ("Infringing Domain") is confusingly similar to the Mark and to Plaintiff's domain name, www.needsupply.com.

51.     Defendant registered and used the Infringing Domain with the bad faith intent of causing harm to Plaintiff and its brands and of profiting unlawfully from the Mark by using the Mark to call attention to the Infringing Domain, thereby increasing sales and revenue for Defendant.

52.     Defendant registered and used the Infringing Domain and Website with the intent to divert and confuse consumers from Need's online location to Defendant's website accessible through the Infringing Domain and with the bad faith intent to harm Plaintiff's goodwill and to profit from the Marks by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the Infringing Domain and Website.

53.     Defendant's actions constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

54.    Defendant's unauthorized registration and use of the Infringing Domain has caused and unless enjoined, will continue to cause, irreparable harm to Need, and to the goodwill associated with the Marks and Need's domain name.

55.    Because Defendant's infringing conduct has caused and is likely to cause substantial injury to the public and to Need, Need is entitled to injunctive relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or Defendant's trebled profits, together with Need's costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement against Defendant as follows:

(1)    that Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant who receive actual notice of the court's order by personal service or otherwise, be permanently enjoined from:

a.    doing any act or thing likely to induce the belief that Defendant's services are in any way connected with, sponsored, affiliated, licensed, or endorsed by Plaintiff;

b.    using any signs and other indicia on Defendant's advertising and promotional materials that use the Mark, whether in print or electronic form;

c.    operating a website or retail store using the name NEED (alone or with any other term);

d.    using NEED in any manner in any media, including in any social media outlet, to advertise, promote, or sell e-commerce services or clothing and fashion accessories;

e.    using the NEED mark or other marks that are deceptively similar to the Mark in connection with a website or as metatags, domain names, other computer addresses, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship, or affiliation of NEED with Defendant.

(2)    that Defendant is further ordered:

a.      to actively and immediately undertake, via search engine optimization or other means, to remove all references to the www.neededition.com website and business from the Internet.

(3)      that defendant, in accordance with 15 U.S.C. §1116(a), be directed to file with this Court and serve upon Plaintiff within thirty (30) days after service of the permanent injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the permanent injunction;

(4)      that Plaintiff recover its actual damages sustained as a result of Defendant's wrongful actions;

(5)      that Plaintiff recover three (3) times Defendant's profits made as a result of Defendant's wrongful actions or three (3) times Plaintiff's damages, whichever is greater;

(6)      that this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Defendant be deemed liable for, and ordered to reimburse Plaintiff for its reasonable attorneys' fees;

(7)      that Plaintiff be awarded exemplary damages for Defendant's willful and intentional acts;

(8)      that Plaintiff recover its costs of court;

(9)      that Plaintiff recover such further relief to which it may be entitled.

Dated:  November 19, 2015              NSCO LLC

                                By:  _____
                                                Of Counsel

Edward T. White (VSB No. 46498)
Stephen M. Faraci, Sr. (VSB No. 42748)
Janet W. Cho (VSB No. 74758)
LeClairRyan, A Professional Corporation
919 East Main Street
Twenty-fourth Floor
Richmond, Virginia  23219

Telephone: (804) 916-7160
Facsimile:  (804) 916-7270
E-mail: edward.white@leclairryan.com

Telephone: (804) 545-1516
Facsimile:  (804) 545-2556
E-mail: stephen.faraci@leclairryan.com

Telephone: (804) 916-7161
Facsimile:  (804) 916-7271
E-mail: janet.cho@leclairryan.com

*Attorneys for Plaintiff, NSCO LLC*